IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-90

 No. 296A19

 Filed 13 August 2021

 WELLS FARGO BANK, N.A.

 v.
 FRANCES J. STOCKS, in his capacity as the executor of the estate of LEWIS H.
 STOCKS aka LEWIS H. STOCKS, III, TIA M. STOCKS, and JEREMY B.
 WILKINS, in his capacity as commissioner

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 266 N.C. App. 228, 831 S.E.2d 378 (2019), reversing and

 remanding an order granting summary judgment for plaintiff entered on 25 April

 2018 by Judge Henry W. Hight in Superior Court, Wake County. On 1 April 2020, the

 Supreme Court allowed plaintiff Wells Fargo Bank, N.A., and defendant Frances J.

 Stocks’ respective petitions for discretionary review of additional issues. Heard in the

 Supreme Court on 28 April 2021.

 The Law Office of John T. Benjamin, Jr., P.A., by John T. Benjamin, Jr., and
 Jake R. Garris, for plaintiff-appellant.

 Howard, Stallings, From, Atkins, Angell & Davis, P.A., by Douglas D. Noreen
 and Rebecca H. Ugolick, for defendant-appellant Frances J. Stocks.

 Janvier Law Firm, PLLC, by Kathleen O’Malley, for defendant-appellee Tia M.
 Stocks.

 NEWBY, Chief Justice.

¶1 In this case we determine whether the trial court properly granted summary
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 judgment for plaintiff reforming a deed of trust and allowing foreclosure. We first

 determine when a cause of action accrues for reformation of a deed of trust based on

 mutual mistake. Section 1-52(9) of the North Carolina General Statutes provides a

 three-year statute of limitations for relief based on a mistake, which begins running

 when the mistake is “discovered.” A party “discovers” a mistake when that party

 knows of the mistake or should have known in the exercise of due diligence. Drafting

 a deed of trust with a mistake apparent on its face, without more, is insufficient to

 put a party on notice of a mistake. Here the document was drafted with an error in

 2005. The first circumstance that would have led plaintiff to question the drafting of

 the document happened upon review of the document when default occurred. Thus,

 the claim accrued after default in January of 2015. As such, plaintiff’s action was

 timely filed on 26 May 2017. Further, there is no genuine issue of material fact as to

 whether the parties intended the deed of trust to secure the defaulted promissory

 note. Therefore, plaintiff is entitled to summary judgment. The decision of the Court

 of Appeals is reversed.

¶2 Defendant Tia Stocks1 is the sole record owner of certain real property located

 at 1504 Harth Drive in Garner, North Carolina (the Property). The Property has been

 her primary residence since 2002, when her late father, Lewis Stocks, helped her

 1 Frances J. Stocks, in his capacity as the executor of the estate of Lewis Stocks, is

 also named as a defendant. Because he argued in alignment with plaintiff at this Court, we
 only refer to Tia Stocks as defendant.
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 obtain financing to purchase it. On 22 March 2002, Lewis Stocks executed a limited

 power of attorney which appointed defendant as his attorney-in-fact to “execut[e] the

 Settlement Statement and loan documents on [his] behalf to effect the purchase” of

 the Property. On 27 March 2002, Lewis Stocks, through defendant as his

 attorney-in-fact, executed a promissory note in the amount of $87,300 to First Union

 National Bank (First Note). On the same day, defendant, together with Lewis

 Stocks—again through defendant as his attorney-in-fact—executed a deed of trust

 (First Deed of Trust) to pledge the Property as collateral to secure the First Note. The

 First Deed of Trust defined the “Borrower” as both defendant and Lewis Stocks. The

 general warranty deed conveying the Property to defendant and the First Deed of

 Trust were recorded on 28 March 2002 in the Wake County Registry. Defendant then

 authorized First Union National Bank to draft monthly payments due under the First

 Note from a bank account in her name. Defendant made all the monthly payments,

 and Lewis Stocks, though the only named borrower on the First Note, did not make

 any payments.

¶3 In 2005, Lewis Stocks refinanced the loan with defendant’s consent. On 12

 January 2005, Lewis Stocks executed a promissory note in the amount of $83,034 to

 Wachovia Bank, N.A.2 (Second Note). Like the First Note, the Second Note only

 2 Before Lewis Stocks refinanced the loan, First Union National Bank merged with

 Wachovia Bank, N.A., which then became the holder of the First Note and the beneficiary
 under the First Deed of Trust.
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 defined Lewis Stocks as the “Borrower.” Section 4(B) of the Second Note states that

 the Borrower “will be in Default under this Note . . . if [Borrower] fail[s] to make any

 payment.” Section 5 of the Second Note states that “a separate Security Instrument[ ]

 on real property . . . described in the Security Instrument and dated the same date as

 this Note, protects the Note Holder from possible losses that might result.” The

 proceeds of the Second Note were used to satisfy the First Note. On 28 January 2005,

 Wachovia Bank recorded a Certificate of Satisfaction, cancelling the First Deed of

 Trust.

¶4 On 19 January 2005, only defendant executed a deed of trust (Second Deed of

 Trust) intending to pledge the Property as collateral to secure the Second Note in the

 amount of $83,034. According to defendant, Lewis Stocks “called [defendant] into his

 medical office and told” her she needed to sign the Second Deed of Trust so that he

 could refinance the loan. No one from Wachovia was present when defendant signed

 the Second Deed of Trust. Though defendant was not listed as a “Borrower” on the

 Second Note, the Second Deed of Trust defines the “Borrower” as only defendant. The

 Second Deed of Trust states that “Borrower is indebted to [Wachovia Bank] in the

 principal sum of U.S. $83,034.00 which indebtedness is evidenced by Borrower’s Note

 dated 01/12/05.” Lewis Stocks, who is the only defined “Borrower” on the Second Note,

 did not execute the Second Deed of Trust, nor does the Second Deed of Trust list him

 as a borrower. By omitting Lewis Stocks, the Second Deed of Trust does not effectively
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 reference the Second Note. The Second Deed of Trust was recorded on 4 February

 2005 in the Wake County Registry.

¶5 Wachovia Bank drafted other documents in conjunction with the loan

 transaction that properly differentiated between Lewis Stocks as the borrower under

 the Second Note and defendant as the owner of the Property, which was intended to

 secure the Second Note. These documents included a Homeowner’s Insurance Notice

 and a Clerical Error Authorization form. Defendant then authorized Wachovia Bank

 to draft monthly installment payments from her bank account and made all the

 payments due under the Second Note until 2015. Lewis Stocks did not make any

 payments due under the Second Note.

¶6 Lewis Stocks died on 23 May 2014, and defendant stopped making payments

 several months thereafter. Defendant’s last payment to Wells Fargo Bank, N.A.3

 (plaintiff) under the Second Note was made on 13 December 2014, and default under

 the Second Note occurred in January of 2015. Plaintiff sent defendant a letter on 26

 February 2015 stating that the Second Note was in default and that plaintiff may

 exercise its available rights against the Property. In accordance with its general

 business practices, plaintiff first referred the account to its attorneys in August of

 3 On 20 March 2010, Wachovia merged with Wells Fargo Bank, N.A., which then

 became the holder of the Second Note and the beneficiary under the Second Deed of Trust.
 For readability, our reference to “plaintiff” includes Wells Fargo and its predecessors-in-
 interest.
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 2016 to commence foreclosure proceedings. While preparing for defendant’s appeal of

 the clerk’s non-judicial foreclosure order in January of 2017, plaintiff’s counsel

 discovered that the Second Deed of Trust did not adequately describe the Second

 Note. After discovering the mistake, plaintiff commenced the present action for

 reformation and judicial foreclosure on 26 May 2017.

¶7 During discovery defendant filed responses to plaintiff’s request for

 admissions, wherein she admitted that: (1) the collateral under the First Deed of

 Trust and Second Deed of Trust was to be the same; (2) the Property was to serve as

 collateral for the Second Note; (3) the purpose of the Second Deed of Trust was to

 secure repayment under the Second Note; (4) she understood the purpose of the

 Second Deed of Trust when she signed it; and (5) she consented to Lewis Stocks’ plan

 to enter into the refinance transaction. In her admissions, however, defendant also

 stated that she “understood that by signing the [Second] Deed of Trust, [she] was

 acting as a surety and that [her] home was acting as collateral for the loan.”

¶8 Plaintiff thereafter moved for summary judgment, first arguing that the

 Second Deed of Trust should be reformed to accurately describe the Second Note as

 the parties intended by stating that “Lewis H Stocks is indebted to Lender in the

 principal sum of U.S. $83034.00 which indebtedness is evidenced by Lewis H Stocks’

 Note dated 01/12/05 and extensions, modifications and renewals thereof.” Plaintiff

 also argued the Second Deed of Trust should define the “Borrower” as “Tia M Stocks
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 and Lewis H Stocks,” as the parties intended. Plaintiff further argued that it properly

 brought its claim within the applicable three-year statute of limitations.

¶9 In response defendant contested whether the parties intended the Second Deed

 of Trust to secure the Second Note. Defendant submitted the following in her

 affidavit:

 In 2005, my father (Dr. Lewis H. Stocks) applied for
 and obtained a second loan from the plaintiff-bank in the
 amount of $83,034. I was not a party to this loan, did not
 attend the loan closing, and was completely unaware that
 my father was obtaining a loan. I never applied for the loan,
 never signed a promissory note, nor did I receive the
 proceeds of the loan. I later learned the second loan was
 used by my father to pay off the first loan he obtained from
 the plaintiff-bank. In addition to not attending the loan
 closing, I was never provided with any RESPA documents,
 Truth-in-Lending documents, or a closing statement
 (HUD-1). The entire 2005 loan was conducted in secrecy
 and any documents having to do with the closing of this
 loan were kept from me. It later became apparent to me
 that the reason these documents were not made available
 to me was because the plaintiff-bank and my father wanted
 to conceal from me the true nature of this loan.

 The trial court granted summary judgment in plaintiff’s favor.

¶ 10 A divided panel of the Court of Appeals reversed. Wells Fargo Bank, N.A. v.

 Stocks, 266 N.C. App. 228, 236, 831 S.E.2d 378, 384 (2019). The Court of Appeals

 began its analysis by determining whether the ten-year statute of limitations in

 N.C.G.S. § 1-47(2) or the three-year statute of limitations in N.C.G.S. § 1-52(9) applies

 to plaintiff’s claim for reformation. Id. at 232, 831 S.E.2d at 381. In doing so, the
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 Court of Appeals cited the rule that “where two statutes deal with the same subject

 matter, the more specific statute will prevail over the more general one.” Id. at 234,

 831 S.E.2d at 382 (quoting Fowler v. Valencourt, 334 N.C. 345, 349, 435 S.E.2d 530,

 532 (1993)). The Court of Appeals agreed with its prior decision in Nationstar

 Mortgage, LLC v. Dean, which held that N.C.G.S. § 1-47(2) is more specific because

 it applies to claims involving a sealed instrument. Stocks, 266 N.C. App. at 234, 831

 S.E.2d at 382 (quoting Nationstar Mortgage, LLC v. Dean, 261 N.C. App. 375, 384,

 820 S.E.2d 854, 860 (2018)). Thus, the Court of Appeals held that N.C.G.S. § 1-47(2)

 applies to plaintiff’s claim “to the exclusion of [N.C.G.S. §] 1-52(9).” Stocks, 266 N.C.

 App. at 234 n.2, 831 S.E.2d at 382 n.2.

¶ 11 Having decided that N.C.G.S. § 1-47(2) applies, the Court of Appeals then

 noted that N.C.G.S. § 1-47(2) does not include express language creating a discovery

 rule. Stocks, 266 N.C. App. at 235, 831 S.E.2d at 383. Thus, the Court of Appeals held

 that plaintiff’s claim accrued, and the statute of limitations began to run, when the

 Second Deed of Trust was executed in January of 2005. Id. Because plaintiff filed its

 claim on 26 May 2017, outside the ten-year statute of limitations period, the Court of

 Appeals held that N.C.G.S. § 1-47(2) bars plaintiff’s claim for reformation.4 Id. As

 such, and because the unreformed Second Deed of Trust did not secure the Second

 4 Because the Court of Appeals found plaintiff’s claim for reformation of the Second

 Deed of Trust was time-barred, the Court of Appeals did not address defendant’s argument
 that she intended to pledge the Property as a surety for her father’s loan.
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 Note, the Court of Appeals reversed the trial court’s grant of summary judgment on

 plaintiff’s claims for reformation and judicial foreclosure. Id. at 236, 831 S.E.2d at

 384.

¶ 12 The dissent, however, would have applied N.C.G.S. § 1-52(9) to plaintiff’s

 claim. Id. at 239–40, 831 S.E.2d at 385 (Arrowood, J., dissenting). The dissent noted

 that though “a cause of action based on fraud or mistake does not accrue until the

 aggrieved party discovers the [mistake],” under Nationstar such a claim “cannot be

 brought after ten years even if the underlying fraud or mistake would not have been

 reasonably discovered during that time.” Id. at 238, 831 S.E.2d at 385. This

 interpretation, the dissent argued, contravenes “the importance of protecting

 defrauded parties, or those injured by a mistake.” Id. Thus, the dissent concluded

 that it “runs counter to logic and our case law” to hold that an action for fraud or

 mistake is barred under N.C.G.S. § 1-47(2) “simply because the document at issue is

 a sealed instrument.” Id. at 239, 831 S.E.2d at 385. Plaintiff appealed to this Court

 based on the dissenting opinion at the Court of Appeals. Plaintiff also filed a petition

 for discretionary review as to additional issues, which this Court allowed.

¶ 13 This Court reviews appeals from summary judgment de novo. In re Will of

 Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is proper

 if “there is no genuine issue as to any material fact and . . . any party is entitled to

 judgment as a matter of law.” N.C.G.S. § 1A-1, Rule 56(c) (2019). “All facts asserted
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 by the [nonmoving] party are taken as true and . . . viewed in the light most favorable

 to that party.” Ussery v. Branch Banking & Tr. Co., 368 N.C. 325, 334, 777 S.E.2d

 272, 278 (2015) (quoting Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835

 (2000)). Summary judgment is appropriate when the moving party establishes “the

 lack of any triable issue of fact.” Texaco, Inc. v. Creel, 310 N.C. 695, 699, 314 S.E.2d

 506, 508 (1984) (quoting Kidd v. Early, 289 N.C. 343, 352, 222 S.E.2d 392, 399 (1976)).

¶ 14 Defendant first argues there is a genuine dispute of material fact as to whether

 plaintiff filed its claim within the applicable statute of limitations. Whether a cause

 of action is barred by the statute of limitations is a question of law “when the bar is

 properly pleaded and the facts are admitted or are not in conflict.” Pembee Mfg. Corp.

 v. Cape Fear Const. Co., Inc., 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citing

 Little v. Rose, 285 N.C. 724, 208 S.E.2d 666 (1974); Teele v. Kerr, 261 N.C. 148, 134

 S.E.2d 126 (1964)).

¶ 15 “If [a] deed or written instrument fails to express the true intention of the

 parties, it may be reformed . . . whe[n] the failure is due to mutual mistake of the

 parties . . . .” Crawford v. Willoughby, 192 N.C. 269, 271, 134 S.E. 494, 495 (1926)

 (citation omitted). N.C.G.S. § 1-52(9) applies to claims “for relief on the ground of . . .

 mistake,” while N.C.G.S. § 1-47(2) applies to claims “[u]pon a sealed instrument or

 an instrument of conveyance of an interest in real property, against the principal

 thereto.” To determine which statute of limitations applies, we must look to the
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 purpose of the cause of action. If the purpose is to enforce a sealed instrument, then

 N.C.G.S. § 1-47(2) applies. But when, as here, the action is to reform an instrument

 because of fraud or mistake, N.C.G.S. § 1-52(9) applies. In Nationstar, the Court of

 Appeals cited the correct principle that the more specific statute controls over the

 more general statute of limitations. Nationstar, 261 N.C. App. at 383, 820 S.E.2d at

 860 (citing Fowler, 334 N.C. at 349, 435 S.E.2d at 532). Nonetheless, it failed to

 examine the nature of the cause of action. Nationstar, 261 N.C. App. at 384, 820

 S.E.2d at 860. Thus, the Court of Appeals’ decision in Nationstar is overruled.

¶ 16 Under N.C.G.S. § 1-52(9), a “cause of action shall not be deemed to have

 accrued until the discovery by the aggrieved party of the facts constituting the fraud

 or mistake.” N.C.G.S. § 1-52(9). A party “discovers” the mistake when the “mistake

 was known or should have been discovered in the exercise of ordinary diligence.”

 Peacock v. Barnes, 142 N.C. 215, 218, 55 S.E. 99, 100 (1906). A mistake in the drafting

 process alone is insufficient to place the drafting party on inquiry notice. See Pelletier

 v. Interstate Cooperage Co., 158 N.C. 403, 407–08, 74 S.E. 112, 113–14 (1912)

 (citations omitted) (holding “that a party will not be affected with notice of a mistake

 existent in the deed” that is due to the “mistake of the draughtsman”); Modlin v.

 Roanoke R. & Lumber Co., 145 N.C. 218, 227, 58 S.E. 1075, 1078 (1907) (citations

 omitted) (stating “that the registration of the deed, or knowledge of its existence . . .

 [is] not of itself sufficient notice of” a mistake); Peacock, 142 N.C. at 217, 55 S.E. at
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 101 (holding that erroneous description of land in a recorded deed was insufficient,

 without more, to put a party on inquiry notice). If an original drafting error were

 sufficient to place the drafter on notice, the discovery rule would be unnecessary

 because the statute of limitations would always begin to run on the date of the

 original error. See id. Rather, “there must be facts and circumstances sufficient to put

 the [drafting party] on inquiry which, if pursued, would lead to the discovery of the

 facts constituting the [mistake].” Vail v. Vail, 233 N.C. 109, 117, 63 S.E.2d 202, 208

 (1951) (citations omitted).

¶ 17 Here the cause of action accrued when plaintiff should have discovered the

 error in the loan documents. The mistake itself, that the Second Deed of Trust refers

 to defendant as the borrower under the Second Note instead of Lewis Stocks, was a

 drafting error. Defendant argues the unusual circumstances surrounding the

 execution of the Second Deed of Trust should have put plaintiff on inquiry notice.

 Defendant notes that she executed the Second Deed of Trust one week after Lewis

 Stocks executed the Second Note, in Lewis Stocks’ office at his direction, and without

 a representative from plaintiff present. Moreover, plaintiff drafted other documents

 that properly differentiated between Lewis Stocks as the borrower and defendant as

 the Property owner.

¶ 18 These circumstances may have raised a question regarding the execution of

 the documents. They do not, however, raise a question regarding the drafting. Had
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 plaintiff reviewed the documents after they were executed, as defendant argues

 plaintiff should have, plaintiff would have found the execution was without error. In

 other words, since the signature matched the defined borrower on the face of the

 document, there was no reason to question the drafting of the Second Deed of Trust.

 As such, these facts and circumstances are insufficient to place plaintiff on inquiry

 notice of the drafting error.

¶ 19 Further, from March of 2005 to December of 2014, plaintiff received every

 payment due under the Second Note. Given the timely payments, there was no reason

 to investigate the loan instruments. Therefore, the first circumstance that would have

 led plaintiff to question the validity of the Second Deed of Trust was the January

 2015 default and the subsequent foreclosure action. In the exercise of due diligence,

 the earliest plaintiff should have discovered the drafting mistake was during this

 time. Having filed the lawsuit on 26 May 2017, the cause of action to reform the

 Second Deed of Trust was timely filed within the three-year statute of limitations

 period.

¶ 20 Defendant next argues there is a genuine dispute of material fact as to whether

 the parties intended the Second Deed of Trust to secure repayment of the Second

 Note. “If [a] deed or written instrument fails to express the true intention of the

 parties, it may be reformed . . . whe[n] the failure is due to the mutual mistake of the

 parties . . . .” Crawford, 192 N.C. at 271, 134 S.E. at 495 (citations omitted). “The
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 phrase ‘mutual mistake’ means a mistake common to all the parties to a written

 instrument and usually relates to a mistake concerning its contents or its legal effect.”

 State Tr. Co. v. Braznell, 227 N.C. 211, 214–15, 41 S.E.2d 744, 746 (1947) (quoting

 M. P. Hubbard & Co., Inc. v. Horne, 203 N.C. 205, 208, 165 S.E. 347, 349 (1932)).

 Facts admitted in a request for admissions under Rule 36 of the North Carolina Rules

 of Civil Procedure are “conclusively established.” N.C.G.S. § 1A-1, Rule 36(b) (2019).

 Therefore, such facts are “sufficient to support a grant of summary judgment.” Goins

 v. Puleo, 350 N.C. 277, 280, 512 S.E.2d 748, 750 (1999) (citing Rhoads v. Bryant, 56

 N.C. App. 635, 289 S.E.2d 637 (1982)). Moreover, a party’s own affidavit “opposing

 summary judgment does not overcome the conclusive effect of [that party’s] previous

 admissions.” Rhoads, 56 N.C. App. at 637, 289 S.E.2d at 639.

¶ 21 Here defendant admitted that she understood the Property was to serve as

 collateral under the Second Deed of Trust to secure repayment of the indebtedness

 evidenced by the Second Note. Defendant cannot use her affidavit to contradict these

 binding admissions. Further, defendant’s contention that she was acting as a surety

 for her father’s loan does not overcome her admissions that she understood that the

 purpose of the Second Deed of Trust was to pledge the Property as collateral for the

 loan under a traditional deed of trust arrangement. See Skinner v. Preferred Credit,

 361 N.C. 114, 120, 638 S.E.2d 203, 209 (2006) (“A deed of trust is a three-party

 arrangement in which the borrower conveys legal title to real property to a third party
 WELLS FARGO BANK, N.A. V. STOCKS

 2021-NCSC-90

 Opinion of the Court

 trustee to hold for the benefit of the lender until repayment of the loan.” (citing

 1 James A. Webster, Jr., Webster’s Real Estate Law in North Carolina § 13-1, at 538

 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999))). Thus, there is

 no genuine dispute of material fact as to whether the parties intended the Second

 Deed of Trust to secure repayment of the Second Note.

¶ 22 Because there is no genuine issue of material fact as to whether plaintiff’s

 claim was timely filed or whether the Second Deed of Trust was intended to secure

 repayment of the Second Note, the Second Deed of Trust should be reformed to match

 the parties’ intent. As such, the trial court properly granted summary judgment for

 plaintiff on its claims for reformation and judicial foreclosure. The decision of the

 Court of Appeals is reversed.

 REVERSED.